UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

AUTOMATED RECOVERY
SYSTEMS OF NEW MEXICO, INC.,

Case No. 22-10225-t11

    Debtor.

## **OPINION**

    Before the Court is Debtor's motion to authorize the payment of attorney fees to its special counsel for work done prepetition. Debtor argues it is holding the fees in trust, so the money is not property of the estate. A creditor objected, disputing that the funds are held in trust and asserting that special counsel is an unsecured creditor and not entitled to payment of its prepetition claim. After an evidentiary hearing, the Court finds and concludes that any collected attorney fees in Debtor's possession are held in trust, are not property of the bankruptcy estate, and should be turned over to special counsel.

A.    <u>Facts</u>.[1]

    The Court finds:[2]

    Since August 2003, Patricia L. Simpson, P.C., d/b/a Simpson Law Office ("Simpson") has represented Debtor in state court collection actions. As compensation, Debtor paid Simpson a small monthly fee ($750), plus any amounts Debtor collected from attorneys' fees awarded by the

---

[1] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).
[2] Some of the Court's findings are in the discussion portion of the opinion. They are incorporated by this reference.

court.³ On May 1, 2010, Debtor and Simpson entered into a written agreement memorializing their longstanding arrangement (the "Agreement"), which provides, inter alia:

> All Attorneys' Fees collected from defendants on judgments awarded to ARSNM, Inc. as plaintiff shall be retained by ARSNM, Inc. All attorney fees collected will be remitted to the Attorney by the tenth (10ᵗʰ) day of the following month.

In determining whether any attorney fees were collected on a given judgment, the parties agreed that money collected would be applied first to principal, interest, and court costs, and only then to awarded attorney fees. The parties further agreed that Debtor would give Simpson periodic accountings of all amounts collected and how they were applied. Finally, the parties agreed that every month Debtor would remit the collected and retained fees to Simpson.

Other than the monthly $750, the fees Debtor collected were Simpson's only source of payment; Simpson did not have recourse against Debtor if no attorney fees were collected on a particular judgment. Only about half the awarded fees were ever paid to Debtor and remitted to Simpson.

Debtor filed this subchapter V case on March 23, 2022. On its schedules it listed "1500 Collection Judgments against multiple debtors." These were obtained by Simpson's efforts. Debtor stated that the face amount of the judgments was $10,000,000, with an unknown value.

Debtor's representative, Brian Myers, described the collected attorney fees as "her [i.e., Simpson's] funds" and testified at the § 341 meeting and the final hearing on the motion that Debtor would collect "any monies awarded to her [Simpson] by the Court," and remit them to Simpson once a month.

---

³ The award of fees was authorized under the Collection Agency Regulatory Act, NMSA § 61-18A-1 et seq. As of July 1, 2021, the Collection Agency Regulatory Act was amended to remove the Court's discretion to award attorney fees. NMSA § 61-18A-26.

Mr. Myers testified that on the petition date, Debtor was holding attorney fees collected between March 1-23, 2022. He did not know the amount.[4] Neither Debtor's bankruptcy schedules nor its Statement of Financial Affairs ("SOFA") disclose any money held in trust. Mr. Myers testified that he did not list the attorney fees as "property held for another"[5] because it did not occur to him that the held attorney fees were "property" as that term is used in the SOFA.

In September 2022, Debtor applied to employ Simpson as special counsel. The Court granted the application in part on October 11, 2022, but reserved the issue of whether Debtor could pay Simpson the attorney fees collected on account of Simpson's prepetition work.

On May 23, 2022, Simpson filed a proof of claim for $24,291.97, which included amounts for fees Debtor collected in March and April 2023. Simpson amended her claim in June to include fees Debtor collected in May 2023.

Pending a Court ruling, Debtor has held all fees collected since the petition date. Postpetition, Debtor has continued to send Simpson monthly accountings of the fees collected.

On October 12, 2022, Debtor filed the motion now before the Court. By then, the attorney fees collected and held had grown to $69,973.14. Debtor asks for permission to pay the funds to Simpson under the theory that they are held in trust for Simpson.

Mitchell and Victoria Hawkes (together, the "Creditor") argues that the funds are not trust funds, that Simpson does not have a charging lien on the funds, and that there is insufficient evidence for the Court to determine the amount owed under the Agreement.

---

[4] Simpson's proof of claim lists attorney fees of $8,549.70 collected in March 2022. Pro-rating that for March 1-23 yields $6,343.39, a reasonable estimate of the alleged trust funds held on the petition date.
[5] SOFA Part 11, question 21.

B. Funds Held in Trust are Not Property of the Estate.

Under § 541(a), all legal or equitable interests of a debtor in property on the petition date are property of the bankruptcy estate unless otherwise excepted. Section 541(d) provides the following exception:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, … becomes property of the estate … only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Such property is held "in trust" for the equitable benefit of another[6] and is excluded from the bankruptcy estate. *See, e.g., United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (discussing § 541(d), the court held that "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition"); and *Begier v. Internal Revenue Service*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'").

C. New Mexico Law on Trusts.

State law determines whether property is held in trust. *See, e.g., In re Akbari-Shahmirzadi,* 2013 WL 3300056, at *4 (Bankr. D.N.M.), citing *In re Kalinowski*, 449 B.R. 797, 806 (Bankr. D.N.M. 2011), affirmed 482 B.R. 334 (10th Cir. BAP 2012) (state law dictates whether a trust relationship exists); *In re White,* 271 B.R. 213, *4 (10th Cir. BAP 2001) (unpublished) ("state law is important when determining whether a trust relationship exists").

Like other states, the principal types of trust recognized in New Mexico are express trusts, resulting trusts, constructive trusts, *see, e.g., Aragon v. Rio Costilla Co-op. Livestock Ass'n*, 112 N.M. 152, 154-56 (S. Ct. 1991), and statutory trusts, *see* N.M.S.A. § 46A-1-102 (New Mexico's

---

[6] *Black's Law Dictionary* (10th ed. 2014) defines a trust as "the right, enforceable solely in equity, to the beneficial enjoyment of property to which another person holds the legal title".

Uniform Trust Code applies to, inter alia, "trusts created pursuant to a statute, judgment or decree that requires the trust to be administered in the manner of an express trust"). Debtor does not say what type of trust governs this dispute.

    1.    <u>Express trust</u>. In New Mexico, an express trust is created by "the direct and positive acts of the parties, by some writing or deed, or will, or by words either expressly or impliedly evincing a desire to create a trust." *Ward v. Buchanan,* 22 N.M. 267, 268 (S. Ct. 1916); *see also Tartaglia v. Hodges*, 129 N.M. 497, 509 (Ct. App. 2000) ("An express trust is one that is created by the manifest intention of the settlor to create it."); *In re Slade*, 471 B.R. 626, 648 n.23 (Bankr. D. N.M. 2012) (citing *Ward* and *Tartaglia*). The trust arises as a "manifestation of the intention to create it," and "either written or spoken words, or conduct, will suffice, and no particular form of words or conduct is necessary." *Rio Costilla Co-op,* 112 N.M. at 154 (adopting *Restatement (Second) of Trusts* § 2 (1957)).

    Tenth Circuit law is to the same effect. *See, e.g., In re Sawaged*, 2011 WL 880464, at *3 n.18 (10th Cir. BAP) (citing *Hore's v. Steele (In re Steele)*, 292 B.R. 422, 427 (Bankr. D. Colo. 2003)) ("Express trusts are those trust relationships which are intentionally entered into by the parties. An express trust may involve a formal declaration of trust or a situation where the intention of the parties to form a trust relationship may be inferred by the surrounding facts and circumstances."); *Akbari-Shahmirzadi*, 2013 WL 3300056, at *5 (citing *Sawaged*).

    2.    <u>Resulting trust</u>. A resulting trust is like an express trust in that both further the settlor's intention to create a trust:

> A resulting trust arises when a person makes a disposition of property under circumstances which raise an inference that such person does not intend that the party taking or holding the property should also have the beneficial interest therein, and where the inference is not rebutted and the beneficial interest is not otherwise disposed of.

*Rio Costilla Co-op*, 112 N.M. at 155 (adopting *Restatement (Second) of Trusts* § 404 (1957)). A resulting trust arises when the settlor did not intend that the person taking the legal title to the property should also have its beneficial interest. *Id.* (citing the *Restatement (Second) of Trusts* § 1 and 5 A. Scott & W. Fratcher, *The Law of Trusts* § 404.1 (4th ed. 1989). Resulting trusts typically arise in situations where property is not fully transferred to a beneficial interest holder or a person gives purchase money to another with the instruction to buy property for a third party. *Id.* In any case, a resulting trust imposes a duty on the trustee to effectuate the intent of the settlor.

      3.      <u>Constructive trust</u>. A constructive trust does not effect the intent of a settlor but rather is imposed to prevent the unjust enrichment that would result if the legal title holder to property were allowed to retain the beneficial enjoyment of it. *See, e.g., Acheff v. Lazare*, 2014 WL 894491 at *11 (D.N.M.), affirmed, 595 Fed. App'x 741 (10th Cir. 2014); *In re Horton*, 618 B.R. 22, 25 (Bankr. D.N.M.) (citing *Tartaglia v. Hodges,* 129 N.M. 497, 510, (Ct. App. 2000), the Court held that "[a] constructive trust is an equitable remedy used 'to prevent the unjust enrichment that would result if the person having the property were permitted to retain it.'"). There is no precise test for when a constructive trust should be imposed, but claimants must show some wrongdoing and be able to trace the wrongfully-held property. *See, e.g., In re DC Energy, LLC*, 555 B.R. 786, 791 (Bankr. D.N.M. 2016) (citing cases); *In re Seneca Oil Co.*, 906 F.2d 1445, 1450 (10th Cir. 1990) ("to obtain a constructive trust over property of a bankrupt, a party must (1) show either sufficient wrongdoing by the bankrupt in acquiring the property or a fiduciary relationship between the party and the bankrupt, and (2) be able to trace the wrongfully-held property").

      4.      <u>Statutory trust</u>. A statutory trust may be a "registered organization" along the lines of a limited liability company, *see, e.g.,* the Delaware Statutory Trust Act, Del. Code Ann. tit. 12, § 3801 et seq., or it may be a trust created by state law to protect citizens from financial harm. *See,*

*e.g.*, the Texas Trust Fund Construction Act, Tex. Prop. Code Ann. §§ 162.001 et seq. Debtor has not argued that the attorney fees at issue are subject to a statutory trust.

D.     Debtor Holds the Attorney Fees in an Express Trust for Simpson.

The Court finds that the parties intended to, and did, create an express trust, whereby any attorney fees collected by Debtor on the judgments would be "retained" in trust and "remitted" to Simpson monthly.

1.     The language of the Agreement. The Agreement provides that Debtor will "retain" all attorney fees that have been collected on judgments awarded to Debtor and "remit" the fees once a month to Simpson. "Retain" is not, perhaps, the *mot juste*, as it is often considered synonymous with "keep."[7] Nevertheless, in context, the Court finds and concludes that the parties intended "retain" to mean "hold," i.e., that Debtor agreed to hold the collected fees until it remitted them to Simpson.

2.     The parties' testimony and course of conduct. This interpretation is reinforced by the parties' uncontradicted testimony and course of conduct.[8] Simpson testified that she considered all attorney fees Debtor collected to be her property. Likewise, Mr. Myers described the money Debtor collected on account of attorney fees as "her money" and that the attorney fees were awarded "to her." In addition, the parties' eighteen-plus year course of dealing, whereby Debtor would collect, account for, hold, and remit the attorney fees monthly is strong evidence that they believed the fees to be Simpson's property. The Court finds that Debtor did not consider itself the owner of the collected fees. Debtor took seriously its duty to hold and remit the fees to Simpson.

---

[7] *Black's Law Dictionary* (10th ed. 2014) defines "retain" (first definition) as "To hold in possession or under control; to keep and not lose, part with, or dismiss."
[8] The Court may consider parol evidence to determine if the Agreement is ambiguous and/or to resolve any ambiguities. *See, e.g., Bogle v. Summit Investment Co., LLC*, 137 N.M. 80, 86 (Ct. App. 2005), citing *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508 (S. Ct. 1991).

Consistent with this belief, Debtor has held the fees collected since the Petition Date, pending the outcome of the motion to remit them to Simpson.

3.   <u>The Uniform Trust Code</u>. NMSA § 46A-4-402(A) provides:

> A trust is created only if:
>    (1) the settlor has capacity to create a trust;
>    (2) the settlor indicates an intention to create the trust;
>    (3) the trust has a definite beneficiary ...;
>    (4) the trustee has duties to perform; and
>    (5) the same person is not the sole trustee and sole beneficiary.

NMSA § 46A-4-407 provides:

> Except as required by a statute other than the Uniform Trust Code [46A-1-101 NMSA 1978], a trust need not be evidenced by a trust instrument, but the creation of an oral trust and its terms may be established only by clear and convincing evidence.

"Except to the extent the UTC or other New Mexico statutes modify it, '[t]he common law of trusts and principles of equity supplement the [UTC].' *Butt v. Bank of America, N.A.*, 477 F.3d 1171, 1180 (10th Cir. 2007), quoting NMSA § 46A-1-106.

Here, the requirements of § 46A-4-402(A) are satisfied. First, Debtor (the settlor) has the capacity to create a trust. Second, the Agreement shows Debtor's intention to do so. Third, Simpson is the beneficiary. Fourth, Debtor has duties to perform (collect the trust funds, account for them, and remit them monthly). Finally, Debtor and Simpson are not the same person.

Debtor's schedules and SOFA do not require a different conclusion. While Debtor did not list any collected attorney fees as property held for another, Mr. Myers' explanation for the failure is plausible. Simpson's attorney fees apparently were not on his mind when he prepared Debtor's schedules and SOFA. There was no formal trustee/beneficiary relationship, as might exist, for example, between a trust company and the beneficiaries of one of the trusts it oversees. Mr. Myers probably did not think of himself as a "trustee." On the other hand, when asked at the final hearing

-8-
Case 22-10225-t11    Doc 175    Filed 04/12/23    Entered 04/12/23 11:25:33 Page 8 of 11

whether the collected fees were Debtor's or Simpson's, Mr. Myers readily acknowledged that they belonged to Simpson. That was how he and Simpson understood the arrangement. Debtor's failure to list the held attorney fees as "property held for another" is not indicative of its intent and understanding under the Agreement.

Creditor argues that Debtor's failure to segregate the collected attorney fees shows the absence of a trust relationship. The argument lacks merit. Segregation of trust assets is not a requirement of an express trust. *See, e.g., In re Dayton Title Agency, Inc.*, 292 B.R. 857, 871 (Bankr. S.D. Ohio 2003), reversed in part on other grounds, 468 B.R. 258 (S.D. Ohio 2012) (commingling of trust funds with non-trust funds does not change the characteristic of either); *In re Wiley*, 2010 WL 5185448, at *5 (Bankr. D.N.M.) (same, citing *Dayton Title*). Here, due to the nature of the collection process, i.e., many small amounts collected over time, segregation was not practicable. Instead, Debtor meticulously calculated the fees owed to Simpson as the judgment payments came in and held them for her benefit until remitted. There is no dispute that Debtor's accounting system allocates and accounts for the collected attorney fees as they are collected. Debtor has never spent any of the collected fees. The failure to segregate here is understandable and does not undermine a trust fund finding.

It is true that most attorney-client fee agreements do not include the client holding fees in an express trust. For example, when a lawyer represents a client and bills by the hour, the lawyer renders bills periodically and the client is expected to pay them. There is no trust relationship. Similarly, when a lawyer takes a case on a contingent fee, the lawyer is paid her fee from the

recovered proceeds, if any. Typically, the contingent fee is collected before the client gets his portion. The lawyer may have a charging lien on the recovered fund, but no trust is created.[9]

Here, in contrast, debt collection was Debtor's business and Debtor could not represent itself in court.[10] Debtor was not willing to pay Simpson a straight percentage of any recovery. Instead, the parties relied on a state statute or rule allowing the recovery of attorney fees in the types of collections actions involved, and Debtor paid Simpson by giving her any fees awarded and collected (after Debtor was fully paid on the judgment). Because the judgment debt, including attorney fees, is owed to Debtor, Debtor agreed to account for, hold in trust, and periodically remit to Simpson all fees collected. The arrangement worked well for Debtor, which took no risk of paying fees without a recovery, and also for Simpson.

Furthermore, Creditor's theory that Simpson is an unsecured creditor creates difficulties. If that were true, what would Simpson's claim amount be? She would have to file a contingent, unliquidated claim for 100% of the attorney fees awarded by the judgments. As the judgments became stale, the amount of her claim would be reduced. After the statute of limitations had run on every judgment, the amount of Simpson's claim would become known. Until then, no bankruptcy trustee or debtor in possession would know how much to pay Simpson on account of her claim.

E.  Calculation of Fees Held.

The evidence about exactly how much Debtor holds in trust for Simpson is cursory. Debtor uses a program to calculate the attorney fees collected and held in trust. Data inputs include each

---

[9] The creditor spent a lot of time arguing that Simpson did not have an attorney charging lien on the funds at issue, even though neither Simpson nor Debtor asserted the existence of such a lien. There is no charging lien.
[10] Collection Agency Regulatory Act, NMSA 1978 § 61-18A-1

judgment amount (separated into principal, interest, costs, and attorney fees) and all amounts paid on the judgment. The program applies each payment according to the Agreement. If the program determines that a portion of any payment received includes attorney fees, that amount is held and later remitted to Simpson.

There is no indication that Debtor's accounting program is inaccurate. Simpson and Debtor are satisfied with it. Although the Court does not have enough evidence to find that Debtor's calculations are accurate down to the penny, it has no evidence to the contrary. Debtor may pay Simpson the trust fund attorney fees it believes accurate. If the amount is later challenged by any party in interest, the Court will address the matter at that time.

## Conclusion

The Agreement, testimony, and course of dealing evidence the creation and observance of an express trust, whereby Debtor collected, held, and remitted to Simpson monthly the attorney fees due her. The fees held by Debtor on the petition date and those collected postpetition are not estate property and may be paid to Simpson.

A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 12, 2023
Copies to counsel of record